1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11  | DEANNA MOREY, an individual, on
12  | behalf of herself and all others
    | similarly situated,

13  |                                    Plaintiff,

14  | vs.

15  | LOUIS VUITTON NORTH
    | AMERICA, INC., a Delaware
16  | corporation,

17  |                                    Defendants.

CASE NO. 11cv1517 WQH (BLM)

ORDER

18  HAYES, Judge:

19      The matter before the Court is the Unopposed Motion for Preliminary Approval

20  of Class Action Settlement filed by Plaintiff Deanna Morey.  (ECF No. 62).

21                              **BACKGROUND**

22      On May 20, 2011, Plaintiff Deanna Morey, on behalf of herself and all others

23  similarly situated, initiated this action by filing a class action Complaint against

24  Defendant Louis Vuitton North America, Inc. in the Superior Court of California,

25  County of San Diego.  (ECF No. 1-1 at 5-12).  Plaintiff alleged that Defendant violated

26  California's Song-Beverly Credit Card Act, Cal. Civ. Code § 1747.08, by requesting

27  and recording shoppers' personal identification information when they used a credit

28

1   card for purchases at Louis Vuitton retail stores.[1]  On July 8, 2011, Plaintiff removed

2   the action to this Court.

3       On July 11, 2011, the Honorable M. James Lorenz sua sponte remanded the

4   action to the state court, finding that the amount in controversy did not exceed

5   $5,000,000  – the amount required for original jurisdiction to vest with this Court

6   pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. section

7   1332(d).  (ECF No. 3).  Defendant filed a Motion for Reconsideration (ECF No. 4),

8   which the Court denied (ECF No. 7).

9       On July 21, 2011, Defendant initiated an appeal to the Court of Appeals for the

10   Ninth Circuit from the Court's July 11, 2011 Order.  (ECF No. 9).  On January 10,

11   2012, the Ninth Circuit reversed, holding that the Court erred in finding that the amount

12   in controversy requirement under CAFA  had not been satisfied.  (ECF No. 16).

13       On February 10, 2012, Defendant filed an Answer to the Complaint.  (ECF No.

14   20).  On February 17, 2012, the Magistrate Judge issued a Rule 26 scheduling Order

15   (ECF No. 21), and discovery commenced.

16       On August 17, 2012, Plaintiff filed the First Amended Class Action Complaint

17   – the operative pleading in this case – in which Plaintiff alleges:

18       Defendant operates retail stores throughout the United States, including
    California. Defendant was, and is, engaged in a pattern of unlawful
19       business practices whereby it utilizes a customer information capture card
    which contained preprinted spaces for credit card customers to write their
20       respective: (i) name; (ii) email address; (iii) address (including ZIP code);

21   _____

22       [1]The Song-Beverly Credit Card Act provides:

23       [N]o person, firm, partnership, association, or corporation
    that accepts credit cards for the transaction of business shall do
    any of the following: ...

24

25       Request, or require as a condition to accepting the credit
    card as payment in full or in part for goods or services, the
26       cardholder to provide personal identification information, which
    the person, firm, partnership, association, or corporation accepting
27       the credit card writes, causes to be written, or otherwise records
    upon the credit card transaction form or otherwise....

28

    Cal. Civ. Code § 1747.08.

1   (iv) birth date; (iv) home telephone number; and (v) mobile telephone
    number. It was, and is, Defendant's policy and practice to request credit
2   card customers to write their respective personal identification information
    upon the customer information capture card in the form of their: (i) names;
3   (ii) email addresses; (iii) addresses; (iv) birth dates; (iv) home telephone
    number; and (v) mobile telephone number, and to subsequently enter such
4   information into its electronic customer database at the point-of-sale.
    Defendant's acts and practices as herein alleged were at all times
5   intentional.

6   (First Amended Class Action Complaint ¶ 2, ECF No. 32 at 2).  Plaintiff proposes to

7   prosecute this action on behalf of "all persons from whom Defendant collected personal

8   identification information in conjunction with a credit card purchase transaction at a

9   California retail store during the period of time beginning May 23, 2010 and continuing

10  through the date of trial...." *Id.* ¶ 21.

11      On August 31, 2012, Defendant filed a Motion to Dismiss.  (ECF No. 33).  On

12  September 28, 2012, Plaintiff filed a Motion for Class Certification.  (ECF No. 37).

13  The parties filed opposition and reply briefs to each motion.  (ECF Nos. 36, 42, 50, 51).

14      On October 2, 2012, Judge Lorenz recused from this case and Judge Hayes was

15  randomly assigned.  (ECF No. 40).

16      On February 13, 2013, after several settlement and case management

17  conferences, the Magistrate Judge issued an Order indicating that the parties had

18  reached a tentative settlement.  (ECF No. 56).

19      On February 29, 2013, Plaintiff filed the Unopposed Motion for Preliminary

20  Approval of Class Action Settlement, accompanied by the declaration of Plaintiff's

21  counsel, Gene J. Stonebarger, and several exhibits.[2]  (ECF No. 62).  Plaintiff moves the

22  Court for an order: "(1) preliminarily approving the Settlement Agreement as being fair,

23  reasonable, and adequate; (2) provisionally certifying the Class under Federal Rule of

24  Civil Procedure 23 for settlement purposes only; (3) preliminarily approving the form,

25

26      [2]Plaintiff submits the following exhibits: (1) Settlement Agreement and Release
    (Exh. 1); (2) proposed Long Form Class Notice (Exh. 1-A); (3) proposed Summary
27  Email Class Notice (Exh. 1-B); (4) proposed Summary Postcard Class Notice (Exh. 1-
    C); (5) proposed Publication Notice (Exh. 1-D); (6) proposed Claim Form (Exh. 1-E);
28  and (7) Firm Resumes of Stonebarger Law, APC and Patterson Law Group, APC (Exhs.
    2-3).

manner, and content of the Class Notices and Claim Form; (4) appointing Plaintiff as the Class Representative; (5) appointing the law firms of Stonebarger Law, APC and Patterson Law Group, APC as counsel for the Class; and (6) setting the date and time of the Fairness Hearing."  (ECF No. 62-1 at 8-9).

On April 25, 2013, Defendant filed a Notice of Service of CAFA Notice of Proposed Settlement.

## TERMS OF PROPOSED SETTLEMENT

The proposed settlement class (the "Class") consists of "all persons who made a credit card purchase at a [Louis Vuitton] store in California during the period from May 20, 2010 to January 28, 2013 and who were requested to and did provide personal identification information, excluding transactions where such personal identification information was collected for shipping, delivery, servicing or repairing of the purchased merchandise or for special orders or paid holds."  (ECF No. 62-1 at 24).

## I.    Class Benefits

"[Defendant] will establish a Merchandise Certificate Fund of $1 million within fifteen (15) days after the Judgment becomes Final, which is forty-five (45) days after the Court enters the Final Approval Order and Judgment ('Effective Date').  All Class members who timely submit a valid claim form will be emailed or mailed a Merchandise Certificate within sixty (60) days after the Effective Date.  The amount of each Merchandise Certificate will be determined by the number of qualifying claims approved by the Settlement Administrator. The actual amount of each Merchandise Certificate will be $1 million divided by the total number of qualifying claims rounded down to the nearest whole dollar. The Merchandise Certificates will be good for all purchases at stand-alone Louis Vuitton retail stores in California, may not be combined, are fully transferable, and have a one-year expiration on use. The Merchandise Certificates cannot be redeemed at leased store locations within department stores." (ECF No. 62-1 at 10 (citing Exh. 1, Settlement Agreement, § III(C))).

## II.   Completing Claim Forms

"Class members will have ninety (90) days after the Court enters its order granting Preliminary Approval of the Settlement ('Claim Deadline') to complete in full and return to the Settlement Administrator a timely Claim Form (substantially in the form of Exhibit E to the Settlement Agreement) to receive a Merchandise Certificate. Class members may submit a claim form electronically through the Settlement Website or by mail. To make an initial claim, Class members do not need to provide any proof of purchase, nor do they need to submit any documentation other than or in addition to the claim form itself. Timeliness of a Claim Form will be determined by the date postmarked by the postal service or other expedited delivery service, or, if submitted electronically through the Settlement Website, the date the Settlement Administrator receives the Claim Form, as evidenced by the transmission receipt." *Id.* at 10-11 (citing Exh. 1, Settlement Agreement, §§ III(C) and III(G)(3)).

## III.   Class Notice

The Notice of Class Action Settlement will be provided through the following methods:

### A.   Email or Direct Mail Notice

"Within thirty (30) days after the Court enters its order granting Preliminary Approval of the Settlement, the Settlement Administrator will email the Summary Email Class Notice (substantially in the form attached as Exhibit B to the Settlement Agreement), or if no email address is available, mail, the Summary Postcard Class Notice (substantially in the form attached as Exhibit C to the Settlement Agreement) to all Class Members for whom [Defendant] has an email address or residential address. After mailing the Summary Postcard Class Notice, the Settlement Administrator will conduct a National Change of Address search for each Class member whose Summary Postcard Class Notice is returned as not deliverable." *Id.* at 11 (citing Exh. 1, Settlement Agreement, § III(G)(2)(a)).

### B.   Publication Notice

"[Defendant] will publish the Publication Notice (substantially in the form

attached as Exhibit D to the Settlement Agreement) in the California edition of USA today two (2) times during the sixty (60) day period after the Court enters its order granting Preliminary Approval of the Settlement." *Id.* (citing Exh. 1, Settlement Agreement § III(G)(2)(c)).

### C.   Settlement Website

"Within twenty-one (21) days after the Court enters its order granting Preliminary Approval of the Settlement, [Defendant] will cause a Settlement Website to be set up. The Settlement Website will be active until the Effective Date and will contain information relating to the Settlement, including the Long Form Class Notice (substantially in the form attached as Exhibit A to the Settlement Agreement) and a Claim Form for Class members to submit electronically." *Id.* at 12 (citing Exh. 1, Settlement Agreement § III(F)).

### IV.   Right to Elect Not to Participate in Settlement

"Class members who wish to exclude themselves from the Settlement must mail to the Settlement Administrator, not later than ninety (90) days after the Court enters its order granting Preliminary Approval of the Settlement, a signed and notarized Election Not to Participate in Settlement. A Class member who does not complete and mail a timely Election Not to Participate in Settlement in the manner and by the deadline specified in the Settlement Agreement will be bound by all terms and conditions of the Settlement, if the Settlement is approved by the Court, and by the Judgment, regardless of whether he or she has objected to the Settlement." *Id.* (citing Exh. 1, Settlement Agreement §III(G)(4)(b)).

### V.   Right to Object

"Class members who wish to object to the Settlement must file with the Court and serve on counsel for the Parties, not later than ninety (90) days after the Court enters its order granting Preliminary Approval of the Settlement Administrator, a written objection to (i) the Settlement, and/or (ii) Plaintiff and Class Counsel's request for attorneys' fees, costs and incentive award. Class members who fail to file and serve

1    timely written objections will be deemed to have waived any objections and will be

2    foreclosed from making any objection (whether by appeal or otherwise) to the

3    Settlement." *Id.* (citing Exh. 1, Settlement Agreement § III(G)(4)(a)).

4    **VI.   Incentive Award to Class Representative**

5        "[I]n the event this Settlement Agreement receives Final Judicial Approval,

6    [Defendant] will pay, within fifteen (15) days after the Effective Date, an incentive

7    award of $5,000.00 to the Class Representative." *Id.* at 13 (citing Exh. 1, Settlement

8    Agreement § III(E)).

9    **VII.  Attorneys' Fees and Costs**

10       "[I]n the event the Parties' Settlement Agreement receives Final Judicial

11   Approval and these attorneys' fees and costs amounts are approved by this Court,

12   [Defendant] will pay, within fifteen (15) days after the Effective Date, Class Counsel's

13   attorneys' fees and costs in the amount of $375,000.00 separate and apart from any

14   benefits to the Class...." *Id.* (citing Exh. 1, Settlement Agreement § III(D)).  "Plaintiffs

15   Motion for attorneys' fees will be filed prior to the objection deadline." *Id.* at 14 (citing

16   *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)).

17   **VIII.  Settlement Implementation Costs**

18       "[Defendant] will bear all costs of providing Class Notice in the manner set forth

19   in the Settlement Agreement and all costs associated with the administration of the

20   Settlement." *Id.* (citing Settlement Agreement § III(F)).

21                                  **DISCUSSION**

22       "Voluntary conciliation and settlement are the preferred means of dispute

23   resolution in complex class action litigation." *Smith v. CRST Van Expedited, Inc.*, 2013

24   WL 163293, at *2 (S.D. Cal. Jan. 14, 2013) (citing *Officers for Justice v. Civil Service

25   Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). But

26   because "[t]he class action device ... is [] susceptible to abuse and carries with it certain

27   inherent structural risks, ... class actions may be settled only with the approval of the

28   district court." *Officers for Justice*, 688 F.2d at 623; *see also* Fed. R. Civ. P. 23(e). "The

1  primary concern ... is the protection of those class members ... whose rights may not

2  have been given due regard by the negotiating parties." *Id.* at 624. "Once the named

3  parties reach a settlement in a purported class action, they are always solidly in favor

4  of their own proposal. There is no advocate to critique the proposal on behalf of absent

5  class members." *Kakani v. Oracle Corp.*, 2007 WL 1793774, at *1 (N.D. Cal. June 19,

6  2007) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959-60 (9th Cir. 2003)). Given these

7  risks and concerns, "[a]pproval ... involves a two-step process in which the Court first

8  determines whether a proposed class action settlement deserves preliminary approval

9  and then, after notice is given to class members, whether final approval is warranted."

10  *National Rural Telecommunications Cooperative v. DIRECTTV, Inc.*, 221 F.R.D. 523,

11  525 (C.D. Cal. 2004).

12  In this case, the Court is at the first step – preliminary approval.  This "initial

13  decision to approve or reject a settlement proposal is committed to the sound discretion

14  of the trial judge." *Officers for Justice*, 688 F.2d at 625.  "Because class members will

15  subsequently receive notice and have an opportunity to be heard on the settlement, th[e]

16  Court need not review the settlement in detail at this juncture."  *In re M.L. Stern*

17  *Overtime Litig.*, 2009 WL 995864, at *3 (S.D. Cal. April 13, 2009).  However, even at

18  this preliminary stage, "a district court may not simply rubber stamp stipulated

19  settlements." *Kakani*, 2007 WL 1793774, at *1.  "Where ... class counsel negotiates a

20  settlement agreement before the class is even certified," – as is the case here – "courts

21  must be particularly vigilant not only for explicit collusion, but also for more subtle

22  signs that class counsel have allowed pursuit of their own self-interests and that of

23  certain class members to infect the negotiations." *Dennis v. Kellogg*, 697 F.3d 858, 864

24  (9th Cir. 2012) (internal quotation omitted).  In order to grant preliminary approval, the

25  Court must "ratify both the propriety of [] certification and the fairness of the

26  settlement." *Staton*, 327 F.3d at 952.

27  //

28  **I.    Propriety of Certification**

Plaintiff seeks certification of a settlement class under Federal Rule of Civil Procedure 23(b)(3).  "To obtain certification of a class action ... under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s [] prerequisites of numerosity, commonality, typicality, and adequacy of representation, and must also establish that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1191 (2013) (internal citations omitted).

## A.    Numerosity

First, a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "Joinder need not be impossible, as long as potential class members would suffer a strong litigation hardship or inconvenience if joinder were required." *Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. May 27, 2010) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)).

The number of putative class members in this action is "approximately 343,427." (04/25/2013 Notice of Service of CAFA Notice of Proposed Settlement, ECF No. 63 at 2).  Accordingly, the Court finds that "potential class members would suffer a strong litigation hardship or inconvenience if joinder were required." *Rannis*, 380 Fed. Appx. at 651.  The numerosity prerequisite has been preliminarily satisfied.

## B.    Commonality

The second Rule 23(a) prerequisite is commonality of class members. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (internal quotation omitted).  For the reasons stated in the Rule 23(b)(3) predominance analysis, discussed below, the Court finds that the commonality prerequisite has been preliminarily satisfied. *See Yeoman v. Ikea U.S. W., Inc.*,

11CV701 WQH BGS, 2012 WL 1598051 (S.D. Cal. May 4, 2012) ("Defendant makes similar arguments under Rule 23(a)(2) regarding commonality and Rule 23(b)(3) regarding predominance. Given the permissive construction of Rule 23(a)(2), the Court presumes that Rule 23(a)(2)'s commonality requirement has been satisfied.").

## C.    Typicality

The third Rule 23(a) prerequisite is typicality of claims.  "The typicality prerequisite ... is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(3)). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.*

Plaintiff alleges that she "purchased merchandise at one of Defendant's stores located in California with a credit card and had her personal identification information collected by Defendant in conjunction with the credit card transaction," in violation of the Song-Beverly Credit Card Act.  (ECF No. 32 at 3). Likewise, the proposed settlement class is composed of individuals who "made a credit card purchase at a [Louis Vuitton] store in California during the period from May 20, 2010 to January 28, 2013" and were "requested to and did provide personal identification information...." (ECF No. 62-1 at 24).  Plaintiff brings no claim unique to herself.  Accordingly, the Court finds that the typicality prerequisite has been preliminarily satisfied.

## D.    Adequacy

The final Rule 23(a) prerequisite is "that 'the representative parties will fairly and adequately protect the interests of the class.'"  *Hanlon*, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(4)).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*  Counsel for Plaintiff has experience prosecuting

1  consumer class actions.  *See* Stonebarger Decl. ¶ 10, ECF No. 62-2 at 4. Based upon
2  this record, the Court finds no indication that Plaintiff or her counsel have any conflict
3  of interest with any other class member.  The Court finds that the adequacy prerequisite
4  has been preliminarily satisfied.

5      **E.    Predominance and Superiority**

6      Having satisfied the Rule 23(a) prerequisites, Plaintiff must next demonstrate that
7  (1) "the questions of law or fact common to class members predominate over any
8  questions affecting only individual members," and (2) "a class action is superior to
9  other available methods for fairly and efficiently adjudicating the controversy."  Fed.
10 R. Civ. P. 23(b)(3).  In her Unopposed Motion for Preliminary Class Settlement,
11 Plaintiff contends that the predominance requirement is satisfied in this case because
12 "Class members are entitled to the same legal remedies based on the same alleged
13 wrongdoing: exposure to the same alleged policy."  (ECF No. 62-1 at 25).

14     The predominance inquiry concerns whether "questions of law or fact common
15 to the class will predominate over any questions affecting only individual members as
16 the litigation progresses."  *Amgen*, 133 S. Ct. at 1195. "When common questions
17 present a significant aspect of the case and they can be resolved for all members of the
18 class in a single adjudication, there is clear justification for handling the dispute on a
19 representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022.

20     In this case, the First Amended Class Action alleges that Defendant had a "policy
21 and practice to request credit card customers to write their respective personal
22 identification information upon [a] customer information capture card ... and to
23 subsequently enter such information into its electronic customer database at the
24 point-of-sale."  (First Amended Class Action Complaint ¶ 2, ECF No. 32 at 2).  Each
25 class member contends that he or she "made a credit card purchase at a [Louis Vuitton]
26 store in California during the period from May 20, 2010 to January 28, 2013" and was
27 "requested to and did provide personal identification information...."  (ECF No. 62-1
28 at 24).  The central question in this case is whether Defendant's policy of requesting

personal identification information violated the Song-Beverly Credit Card Act. This question is common to the class, and it is one that can be answered with common evidence. *Yeoman v. Ikea U.S. W., Inc.*, 11CV701 WQH BGS, 2012 WL 1598051, *13 (S.D. Cal. May 4, 2012) ("Plaintiff has shown that common questions of law and fact predominate over other issues in this case on the grounds that Ikea's uniform policy and practice of requesting personal identification information from customers during credit card transactions can be evaluated to determine if the Song-Beverly Credit Card Act was violated."); *see also Yeoman v. Ikea U.S. W., Inc.*, 11CV701 WQH BGS, 2012 WL 1598051 (S.D. Cal. Feb. 27, 2013) ("A court applies an objective test to determine whether a retailer's request for personal identification information would be perceived as a condition of credit card payment." ).  The Court finds that the Rule 23(b)(3) predominance requirement has been preliminarily established.

Next, the Court must consider whether "a class action [would be] 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Wolin v. Jaguar Land Rover North America, LLC*, 619 F.3d 1168, 1175 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)).  In making this determination, the court should include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23 (b)(3). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accujix Research Inst., Inc.*, 253 F .3d 1180, 1190 (9th Cir. 2001).

In this case, the small amount of money at stake and the expenses associated with bringing an individual case makes it highly unlikely that individual litigation would be

1  undertaken.  A class action would offer those with small claims the opportunity for

2  meaningful redress.  *See id.* at 1190 (interest of each class member in prosecuting an

3  individual action is minimal "[w]here damages suffered by each putative class member

4  are not large...).  The Court is unaware of any other litigation involving the same

5  controversy.  The Court finds it desirable to concentrate the litigation in this forum, and

6  unlikely that there will be difficulties in managing this class action.  *See Hanlon*, 150

7  F.3d at 1019 ("When common questions present a significant aspect of the case and

8  they can be resolved for all members of the class in a single adjudication, there is clear

9  justification for handling the dispute on a representative rather than on an individual

10  basis.").  The Court finds that the Rule 23(b)(3) superiority requirement has been

11  preliminarily established.

12       The Court grants preliminary certification of the proposed settlement class.

13  **III.    Fairness of the Proposed Settlement**

14       Next, the Court must "review[] the substance of the settlement ... to ensure that

15  it is 'fair, adequate, and free of collusion.'"  *Lane v. Facebook*, 696 F.3d 811, 819 (9th

16  Cir. 2012) (citing *Hanlon*, 150 F.3d at 1026). "In making this appraisal, courts have

17  'broad discretion' to consider a range of factors such as 'the strength of the plaintiffs'

18  case; the risk, expense, complexity, and likely duration of further litigation; the risk of

19  maintaining class action status throughout the trial; the amount offered in settlement;

20  the extent of discovery completed and the stage of the proceedings; the experience and

21  views of counsel; the presence of a governmental participant; and the reaction of the

22  class members to the proposed settlement.'"  *Smith*, 2013 WL 163293, at *2. "The

23  relative importance to be attached to any factor will depend upon and be dictated by the

24  nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and

25  circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

26

27       "But because the Court cannot fully assess many of these factors prior to notice

28  and an opportunity for objection, the Court need not conduct a full settlement fairness

appraisal before granting preliminary approval; rather, the proposed settlement need only fall within 'the range of possible approval.'" *Dennis v. Kellogg Co.*, 09-CV-1786-IEG WMC, 2013 WL 1883071, *4 (S.D. Cal. May 3, 2013) (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008)). "Essentially, the court is only concerned with whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." *Alberto*, 252 F.R.D. at 666.

In this case, Plaintiff's counsel has demonstrated that the procedure for reaching this settlement was fair and reasonable and that the settlement was the product of arms-length negotiations. *See* Stonebarger Decl. ¶¶ 2-5, ECF No. 62-2 at 2. A significant amount of litigation and discovery has been undertaken in prosecuting this action, *see id.* ¶ 6, and Plaintiff's counsel has demonstrated that further litigation would bring additional risk and expense to the class. *See id.* ¶¶ 3, 5. While these factors weigh in favor of granting preliminary approval, the Court has concerns about the use of "Merchandise Certificates" (i.e., "vouchers" or "coupons") in the settlement award. Under the terms of the Settlement Agreement, a Merchandise Certificate can only be used towards a future purchase of Louis Vuitton goods at a Louis Vuitton retail store.

The CAFA includes an express requirement that "the court may approve the proposed [coupon] settlement only after hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e). Although this "fair, reasonable, and adequate" standard is identical to that contained in Rule 23(e)(2), "several courts have interpreted section 1712(e) as imposing a heightened level of scrutiny in reviewing such coupon settlements." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010) (collecting cases); *see also* S. Rep. No. 109–14, at 27 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 27 (stating that Section 5 of CAFA "requires greater scrutiny of coupon settlements"). Likewise, the Federal Rules of Civil Procedure instruct the court that "[s]ettlements

1    involving nonmonetary provisions for class members deserve careful scrutiny to ensure

2    that these provisions have actual value to the class."  See Fed. R. Civ. P. 23(h), 2003

3    Advisory Committee Notes.   "Accordingly, *before granting final approval*, the court

4    'must discern if the value of a specific coupon settlement is reasonable in relation to the

5    value of the claims surrendered.'"  *In re EasySaver Rewards Litig.*, 921 F. Supp. 2d

6    1040 (S.D. Cal. 2013) (emphasis added) (quoting *True*, 749 F. Supp. 2d at 1069); *Sobel*

7    *v. Hertz Corp.,* 3:06-CV-00545-LRH, 2011 WL 2559565 (D. Nev. June 27, 2011)

8    (same).

9        In light of the other factors weighing in favor of preliminary approval, the Court

10   finds that the settlement falls within the range of possible approval.  *See In re General*

11   *Motors Corp.*, 55 F.3d at 784 (noting the standard is whether the settlement "falls

12   within the range of possible approval"); *see also Young v. Polo Retail, LLC*, No. C-02-

13   4546 VRW, 2006 WL 3050861, at *5 (granting preliminary approval in settlement

14   involving vouchers, but "anticipat[ing] redressing this issue at the final approval

15   hearing").  "The fact that a proposed settlement may only amount to a fraction of the

16   potential recovery does not, in and of itself, mean that the proposed settlement is grossly

17   inadequate and should be disapproved."  *Linney v. Cellular Alaska P'ship*, 151 F.3d

18   1234, 1242 (9th Cir. 1998) (quotation omitted).

19       The Court grants preliminary approval of class settlement.  In the final approval

20   briefing, the parties shall fully address the Court's concerns regarding the actual value

21   of the Merchandise Certificates and the impact of the Merchandise Certificates on the

22   attorneys' fee award.  The parties shall also be prepared to discuss these issues at the

23   fairness hearing.  *See In re EasySaver Rewards Litig.*, 921 F. Supp. 2d at 1040

24   ("[B]efore granting final approval, the court must discern if the value of a specific

25   coupon settlement is reasonable in relation to the value of the claims surrendered."

26   (quotation omitted)); *see also* 28 U.S.C. § 1712(a) ("If a proposed settlement in a class

27   action provides for a recovery of coupons to a class member, the portion of any

28   attorney's fee award to class counsel that is attributable to the award of the coupons

1    shall be based on the value to class members of the coupons that are redeemed.").

2    **IV.    Notice**

3        Plaintiff has provided the proposed Long Form Class Notice, Summary Email

4    Class Notice, Summary Postcard Class Notice, Publication Notice and Claim Form (Pl.

5    Exhs. 1-B, 1-C, 1-D, 1-E, ECF No. 62-3 at 22-39), which are satisfactory to the Court

6    in all respects except one.

7        The Settlement Administrator shall make available an electronic copy of this

8    preliminary approval Order in a prominent location on the Settlement Website.  The

9    Settlement Administrator shall include a statement, in a prominent location on the Long

10   Form Class Notice, Summary Email Class Notice, Summary Postcard Class Notice,

11   Publication Notice and Claim Form, informing putative class members that a copy of

12   this Order is available on the Settlement Website.

13       In all other respects, the Court finds that the Notices are reasonably calculated to

14   adequately apprise Class Members of (a) the pending lawsuit, (b) the proposed

15   settlement, and (c) their rights, including the right to either participate in the settlement,

16   exclude themselves from the settlement, or object to the settlement.

17                              **CONCLUSION**

18       IT IS HEREBY ORDERED that the Unopposed Motion for Preliminary

19   Approval of Class Action Settlement (ECF No. 62) filed by Plaintiff Deanna Morey is

20   GRANTED in part, as follows:

21   1.    The Settlement Agreement (Pl. Exh. 1, ECF No. 62-3 at 1-20), including the

22         Long Form Class Notice, Summary Email Class Notice, Summary Postcard Class

23         Notice, Publication Notice and Claim Form, attached to the Settlement

24         Agreement as Exhibits A through E (*Id.* at 21-39), are preliminarily approved;

25   2.    The Class is provisionally certified as a class of all persons who made a credit

26         card purchase at a Louis Vuitton store in California during the period from May

27         20, 2010 to January 28, 2013 and who were requested to and did provide

28         personal identification information, excluding transactions where such personal

identification information was collected for a special purpose incidental but related to the individual credit card transaction, including but not limited to information relating to shipping, delivery, servicing or repairing of the purchased merchandise or for special orders or paid holds ("Class Members");

3. Defendant Louis Vuitton North America, Inc. will notify Class Members of the settlement in the manner specified under Section III(G)(2) of the Settlement Agreement. Defendant will pay all costs associated with claims administration and providing notice to Class Members. No later than seven (7) calendar days before the filing date of Plaintiff's application or motion in support of the Final Approval Order and Judgment, Defendant is to provide Plaintiff with a declaration or declarations from the Settlement Administrator confirming that the notice has been provided in accordance with paragraph 3.3 of the Settlement Agreement;

4. The Settlement Administrator shall make available an electronic copy of this preliminary approval Order in a prominent location on the Settlement Website. The Settlement Administrator shall include a statement, in a prominent location on the Long Form Class Notice, Summary Email Class Notice, Summary Postcard Class Notice, Publication Notice and Claim Form, informing putative class members that a copy of this Order is available on the Settlement Website.

5. Class Members who want to receive a Merchandise Certificate under the Settlement Agreement must accurately and completely fill out a Claim Form and submit it to the Claims Administrator electronically or by U.S. mail within ninety (90) calendar days from the date of this Order. Timeliness of a Claim Form shall be determined by the date postmarked by the postal service or other expedited delivery service, or, if submitted electronically through the Settlement Website, the date the Settlement Administrator receives the Claim Form, as evidenced by the transmission receipt;

6. Class Members who have not submitted a timely written exclusion request

pursuant to paragraph 8 below and who want to object to the Settlement Agreement must file a written objection and/or a Notice of Intention to Appear with the Court, and serve copies on Class Counsel and Defendant's Counsel no later than ninety (90) calendar days after the date of this Order.  The Objection must state:  (a) the name of the Action, "*Morey v. Louis Vuitton North America, Inc.*, S.D. Cal. Case No. 3:11-cv-01517-WQH-BLM"; (b) the full name, address, and telephone number of the person objecting, (c) a statement that the person is a Class Member; (d) the words "Notice of Objection" or "Formal Objection"; (e) in clear and concise terms, the legal and factual arguments supporting the objection; and (f) whether the person intends to appear to speak at the Fairness Hearing.  If the objection is presented through an attorney, the written objection must also include: (a) the identity and number of Class Members represented by objector's counsel; (b) the number of such represented Class Members who have opted out of the Settlement; and (c) the number of such represented Class Members who have remained in the Settlement and have not objected.  The objection will not be valid if it only objects to the lawsuit's appropriateness or merits.  Any Class Member who files and serves a written objection, as described in this Paragraph, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, or to the award of Attorneys' Fees.   Class Members, or their attorneys, intending to make an appearance at the Fairness Hearing, must deliver to Class Counsel and Defendants' Counsel, and file with the Court, no later than ninety (90) calendar days after the date of this Order, a Notice of Intention to Appear.  Only Class Members who file and serve timely Notices of Intention to Appear may speak at the Fairness Hearing. Class Members who fail to make objections in this manner will be deemed to have waived any objections and will be foreclosed from making any objections (whether by a subsequent objection,

1      intervention, appeal, or any other process) to the Settlement Agreement;

2  7.   Class Members who fail to object to the Settlement Agreement in the manner

3      specified above will: (a) be deemed to have waived their right to object to the

4      Settlement Agreement; (b) be foreclosed from objecting (whether by a

5      subsequent objection, intervention, appeal, or any other process) to the

6      Settlement Agreement; and (c) not be entitled to speak at the Fairness Hearing;

7  8.   Class Members who want to be excluded from the settlement must send a letter

8      or postcard to the Claims Administrator stating: (a) the name and case number

9      of the Action, "*Morey v. Louis Vuitton North America, Inc.*, S.D. Cal. Case No.

10     3:11-cv-01517-WQH-BLM"; (b) the full name, address, and telephone number

11     of the person requesting exclusion; and (c) a statement that the person is a Class

12     Member and wishes to be excluded from the Class, postmarked no later than

13     ninety (90) calendar days after the date of this order.  Defendant is to provide

14     Plaintiff with a list of Class Members, prepared by the Settlement Administrator,

15     who have timely and validly excluded themselves from the Class no later than

16     fourteen (14) days after the deadline for submission of Elections Not to

17     Participate in Settlement;

18 9.   Plaintiff is conditionally certified as the Class Representative to implement the

19     Parties' settlement in accordance with the Settlement Agreement.  Stonebarger

20     Law, APC and Patterson Law Group, APC are appointed as Class Counsel.

21     Plaintiff and Class Counsel must fairly and adequately protect the Class's

22     interests;

23 10.  If the Settlement Agreement terminates for any reason, the following will occur:

24     (a) Class certification will be automatically vacated; (b) Plaintiff will revert to

25     functioning as a putative class representative as if no class had been certified; and

26     (c) this Action will revert to its previous status in all respects as it existed

27     immediately before the Parties executed the Settlement Agreement.  This Order

28     will not waive or otherwise impact the Parties' rights or arguments;

11.    Nothing in this Order is, or may be construed as, an admission or concession on any point of fact or law by or against any Party;

12.    All discovery and pretrial proceedings and deadlines are stayed and suspended until further notice from the Court, except for such actions as are necessary to implement the Settlement Agreement and this Order;

13.    **On December 12, 2013 at 3:30 P.M. in Courtroom 14B**, this Court will hold a Fairness Hearing to determine whether the Settlement Agreement should be finally approved as fair, reasonable, and adequate. Class Counsel's attorneys' fee application must be filed fourteen (14) calendar days before the deadline for Class Members to object to the settlement. All papers supporting Final Approval of the Settlement Agreement must be filed no later than seven (7) calendar days before the Fairness Hearing. This Court may order the Fairness Hearing to be postponed, adjourned, or continued. If that occurs, Defendant will not be required to provide additional notice to Class Members.

DATED:  August 15, 2013

**WILLIAM Q. HAYES**
United States District Judge