1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANNA MOREY, an individual, on behalf of herself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>           vs.<br><br>LOUIS VUITTON NORTH AMERICA, INC., a Delaware corporation,<br><br>                                    Defendants. | CASE NO. 11cv1517 WQH (BLM)<br><br>ORDER |

HAYES, Judge:

The matters before the Court are the unopposed Motion in Support of Award of Attorney's Fees, Costs, and Incentive Award (ECF No. 65), and the unopposed Motion for Final Approval of Class Action Settlement (ECF No. 68), filed by Plaintiff Deanna Morey.

## BACKGROUND

On May 20, 2011, Plaintiff Deanna Morey, on behalf of herself and all others similarly situated, initiated this action by filing a class action Complaint against Defendant Louis Vuitton North America, Inc. ("LVNA") in the Superior Court of California, County of San Diego. (ECF No. 1-1 at 5-12). Plaintiff alleged that Defendant violated California's Song-Beverly Credit Card Act, Cal. Civ. Code §

1747.08, by requesting and recording personal identification information when shoppers used a credit card for purchases at Louis Vuitton retail stores.[1]   On July 8, 2011, Plaintiff removed the action to this Court.

On July 11, 2011, the Honorable M. James Lorenz sua sponte remanded the action to the state court, finding that the amount in controversy did not exceed $5,000,000 – the amount required for original jurisdiction to vest with this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. section 1332(d).  (ECF No. 3).  Defendant filed a Motion for Reconsideration (ECF No. 4), which the Court denied. (ECF No. 7).

On July 21, 2011, Defendant initiated an appeal to the Court of Appeals for the Ninth Circuit from the Court's July 11, 2011 Order.  (ECF No. 9).  On January 10, 2012, the Ninth Circuit reversed, holding that the Court erred in finding that the amount in controversy requirement under CAFA  had not been satisfied.  (ECF No. 16).

On February 10, 2012, Defendant filed an Answer to the Complaint.  (ECF No. 20).  On February 17, 2012, the Magistrate Judge issued a Rule 26 scheduling Order (ECF No. 21), and discovery commenced.

On August 17, 2012, Plaintiff filed the First Amended Class Action Complaint – the operative pleading in this case – in which Plaintiff alleges:

> Defendant operates retail stores throughout the United States, including California. Defendant was, and is, engaged in a pattern of unlawful business practices whereby it utilizes a customer information capture card

---

[1]The Song-Beverly Credit Card Act provides:

> [N]o person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business shall do any of the following: ...

> Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise....

Cal. Civ. Code § 1747.08.

1
2
3
4
5
6

which contained preprinted spaces for credit card customers to write their respective: (i) name; (ii) email address; (iii) address (including ZIP code); (iv) birth date; (iv) home telephone number; and (v) mobile telephone number. It was, and is, Defendant's policy and practice to request credit card customers to write their respective personal identification information upon the customer information capture card in the form of their: (i) names; (ii) email addresses; (iii) addresses; (iv) birth dates; (iv) home telephone number; and (v) mobile telephone number, and to subsequently enter such information into its electronic customer database at the point-of-sale. Defendant's acts and practices as herein alleged were at all times intentional.

7    (First Amended Class Action Complaint ¶ 2, ECF No. 32 at 2).  Plaintiff proposed to

8    prosecute this action on behalf of "all persons from whom Defendant collected personal

9    identification information in conjunction with a credit card purchase transaction at a

10   California retail store during the period of time beginning May 23, 2010 and continuing

11   through the date of trial...."  *Id.* ¶ 21.

12       On August 31, 2012, Defendant filed a Motion to Dismiss.  (ECF No. 33).  On

13   September 28, 2012, Plaintiff filed a Motion for Class Certification.  (ECF No. 37).

14   The parties filed opposition and reply briefs to each motion.  (ECF Nos. 36, 42, 50, 51).

15       On October 2, 2012, Judge Lorenz recused himself from this case and Judge

16   Hayes was assigned.  (ECF No. 40).

17       On February 13, 2013, after several settlement and case management

18   conferences, the Magistrate Judge issued an Order indicating that the parties had

19   reached a tentative settlement.  (ECF No. 56).

20       On February 29, 2013, Plaintiff filed an unopposed Motion for Preliminary

21   Approval of Class Action Settlement, accompanied by the declaration of Plaintiff's

22   counsel, Gene J. Stonebarger, and several exhibits.  (ECF No. 62).  On August 15,

23   2013, the Court issued an order that (1) preliminarily approved the settlement

24   agreement; (2) provisionally certified the class; (3) conditionally certified Plaintiff as

25   Class Representative; and (4) appointed Stonebarger Law, APC and Patterson Law

26   Group, APC as Class Counsel.  The August 15, 2013 Order ordered notice and provided

27   detailed information to class members regarding their rights under the Settlement

28   Agreement.  (ECF No. 64).

On October 30, 2013, Plaintiff filed a Motion in Support of Award of Attorney's Fees, Costs, and Incentive Award ("Motion for Attorneys' Fees").  (ECF No. 65).

On December 5, 2013, Plaintiff filed a Motion for Final Approval of Class Action Settlement.  (ECF No. 68).

On December 12, 2013, the Court held a fairness hearing.  (ECF No. 69).  No Class members appeared.

## TERMS OF THE PROPOSED SETTLEMENT

The proposed settlement class (the "Class") consists of "all persons who made a credit card purchase at a [Louis Vuitton] store in California during the period from May 20, 2010 to January 28, 2013 and who were requested to and did provide personal identification information, excluding transactions where such personal identification information was collected for shipping, delivery, servicing or repairing of the purchased merchandise or for special orders or paid holds."  (ECF No. 62-1 at 24).

### I.   Class Benefits

"Class members have been presented with the opportunity to submit a claim for a Merchandise Credit.  The Settlement Administrator received 23,876 timely claims. Thus, these 23,876 individuals who timely submitted a valid claim will receive Merchandise Certificates in the amount of $41.00.[2]"  (Declaration of Matthew J. McDermott - Class Administrator, ECF No. 68-3 ¶ 10).

"The Merchandise Certificates will be good for all purchases at stand-alone Louis Vuitton retail stores in California, may not be combined, are fully transferable, and have a one-year expiration on use. The Merchandise Certificates cannot be redeemed at leased store locations within department stores."  (ECF No. 62-1 at 10) (citing Exh. 1, Settlement Agreement, § III(C)).

### II.   Class Notice

"In compliance with the Court's Preliminary Approval Order dated August 15,

---

[2] Under the Settlement, the actual amount of each Merchandise Certificate will be $1 million divided by the total number of qualifying claims rounded down to the nearest whole dollar. $1 million divided by 23,876 is $41.88.

2013 ... LVNA provided notice to the Class in four ways: Direct Email Notice, Direct Mail Notice, Publication Notice and Website Notice.  The Class Notice ... described, inter alia, the claims in the lawsuit, the terms of the Settlement, and the procedures for objecting to the Settlement and for electing to be excluded from the Class and the Settlement.  The Notice also informed Class members that they are permitted to appear at the Fairness Hearing on December 12, 2013, either with or without counsel.  LVNA provided Class members with sufficient notice of the Settlement."  (ECF No. 68-1 at 8-9).

### A.   Direct Email Notice

"On September 13, 2013, the Settlement Administrator emailed the Summary Email Class Notice ... to all Class members for whom LVNA has a valid email address. ...  The Settlement Administrator sent the Email Notice to 221,717 Class members.... As of December 3, 2013, 296 email notices were returned as undeliverable." (McDermott Decl. Exh. 2, ECF No. 68-5 ¶¶ 3,7).

### B.   Direct Mail Notice

"On September 13, 2013, the Settlement Administrator mailed a postcard containing the Summary Postcard Class Notice ... to all class members for whom LVNA has a valid mailing address and who were not sent the Summary Email Class Notice....  The Settlement Administrator sent the Summary Postcard Notice to 106,001 Class members....  As of December 3, 2013, 6,245 postcard notices were returned as undeliverable....  The Settlement Administrator re-mailed 233 postcard notices to forwarding addresses provided by the U.S. Postal Service, of which 14 were returned a second time."  (McDermott Decl. Exh. 1, ECF No. 68-4 ¶¶ 3,7).

### C.   Publication Notice

"On September 24, 2013 and September 30, 2013, LVNA published the Publication Notice ... in the Los Angeles and San Francisco editions of USA Today." (McDermott Decl. Exh. 3, ECF No. 68-6 ¶ 4).

///

**D.    Website Notice**

"Prior to September 13, 2013, the Settlement Administrator established a settlement-specific website, located at www.lvnasettlement.com (the 'Settlement Website') for Class members to visit and learn information about the case.  The website has an online claim filing and email contact capabilities.  Additionally, downloadable copies of the Preliminary Approval Order, Long Notice, Settlement Agreement, and Claim Form are available on the website.  The downloadable Claim Form and online filing capability were disabled after the November 13, 2013 filing deadline." (McDermott Decl., ECF No. 68-3 ¶ 5).

**III.    Objections to and Exclusions From the Settlement**

"Pursuant to the Court's Preliminary Approval Order, Class members were required to file and postmark any objections to the proposed settlement on or before November 13, 2013.  Similarly, Class members wishing to opt out of the settlement were required to mail a letter electing to exclude themselves from the Class on or before November 13, 2013.  There have been no objections and only seven (7) valid requests to be excluded."  (McDermott Decl., ECF No. 68-3 ¶¶ 8-9).

**IV.    Attorney's Fees, Costs and Incentive Fee Award**

"The Preliminary Approval Order appointed Plaintiff Deanna Morey as the Class Representative, and the law firms of Stonebarger Law, APC and Patterson Law Group, APC as Class Counsel.  Plaintiff filed her Motion for Attorney's Fees[,] Costs and Incentive Award on October 30, 2013, fourteen (14) calendar days prior to the Class members' objection deadline. [The] Class [R]epresentative applied for an incentive award of $5,000, and $375,000 in attorney's fees and costs to Class Counsel." *Id.*

**DISCUSSION**

**I.    Class Certification**

Plaintiff seeks certification of a settlement class under Federal Rule of Civil Procedure 23(b)(3).  "To obtain certification of a class action ... under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s [] prerequisites of numerosity, commonality,

typicality, and adequacy of representation, and must also establish that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1191 (2013) (internal citations omitted). In this case, the Court previously preliminarily certified the proposed settlement class. (ECF No. 64 at 9-13). At that time, the Court concluded that the proposed class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). *Id*. The Court also found that the proposed class satisfied the predominance and superiority requirements of Rule 23(b)(3). No party or class member has objected to certification of the settlement class. The Court reaffirms its prior certification of the class for purposes of settlement.

A list of those putative Class members who have timely elected to opt out of the Settlement and the Class, and who are therefore not bound by the Settlement, the provisions of the Settlement Agreement, this Order and the final Judgment to be entered by the Clerk of the Court hereon, has been submitted to the Court in the Declaration of Matthew J. McDermott, filed in advance of the Final Approval Hearing. All other Class members (as permanently certified below) shall be subject to all of the provisions of the Settlement, the Settlement Agreement, this Order, and final Judgment to be entered by the Clerk of Court.

**II.   Notice**

Notice to the putative Class members was comprised of individual mailed and emailed notice to all known Class members and steps taken to provide notice to unknown Class members. The Court finds that this notice (i) constituted the best notice practicable under the circumstances, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise the putative Class members of the pendency of the action, and of their right to object and to appear at the Final Approval Hearing or to exclude themselves from the Settlement, (iii) was reasonable and

constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) fully complied with due process principles and Federal Rule of Civil Procedure 23.

## III.   Fairness of the Settlement

### A.   Legal Standard

Courts require a higher standard of fairness when a settlement takes place prior to formal class certification to ensure class counsel and Defendant have not colluded in settling the case. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "The question [the Court] address[es] is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

Courts consider several factors when determining whether a proposed "settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (*quoting Hanlon*, 150 F.3d at 1027). These factors may include one or more of the following: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F. 3d 1370, 1376 (9th Cir. 1993) (holding that

only one factor was necessary to demonstrate that the district court was acting within its discretion in approving the settlement).

**B.     Analysis**

**1.     The strength of the case and the risk, expense, complexity, and likely duration of further litigation**

To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance against the risks of continued litigation (including the strengths and weaknesses of Plaintiff's case), the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

> The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Plaintiff asserts that the settlement is fair and reasonable in light of the risk, expense, complexity, and likely duration of further litigation if the case were to proceed to trial. (ECF No. 68-1 at 15-16). Specifically, Plaintiff asserts that "the uncertainty as to whether consumers' voluntariness constitutes an affirmative defense creates substantial risk for both sides." *Id.* at 16 (citing Declaration of Gene J. Stonebarger, ECF No. 68-2 ¶ 5). Plaintiff acknowledges the expense and length of continued proceedings necessary to prosecute the litigation against LVNA through trial and appeals. *Id.* In reaching a settlement, Plaintiff has also taken into account the uncertain outcome and the risk of any litigation, "especially in complex actions such as this Class Action, as well as the difficulties and delays inherent in such litigation. This litigation involves complex class action issues, which would involve protracted risky litigation if not settled." *Id.* Given these risks, the Court agrees that the actual recovery through settlement confers substantial benefits on the class that outweigh potential recovery

1    through full adjudication.

2              **2.    The stage of the proceedings**

3         In the context of class action settlements, as long as the parties have sufficient

4    information to make an informed decision about settlement, "formal discovery is not

5    a necessary ticket to the bargaining table." *Linney*, 151 F.3d at 1239 (quoting *In re*

6    *Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)) (internal quotations

7    omitted).  In this case, the parties have engaged in formal discovery, "allowing Class

8    Counsel and counsel for LVNA to sufficiently evaluate their positions' strengths and

9    weaknesses, and the probable expense of taking this case to trial." (ECF No. 68-1 at

10   18).  In addition to conducting discovery, the parties have engaged in extensive

11   settlement discussions through the course of this case, including a settlement conference

12   with a Magistrate Judge.  The case was filed in San Diego Superior Court in May of

13   2011, and the parties reached a tentative settlement on February 11, 2013. The parties'

14   extensive investigation, discovery, and subsequent settlement discussions during that

15   time weigh heavily in favor of granting final approval.

16             **3.    The settlement amount**

17        To assess whether the amount offered is fair, the Court may compare the

18   settlement amount to the parties' estimates of the maximum amount of damages

19   recoverable in a successful litigation.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at

20   459.  While settlement amounts that are close to the plaintiffs' estimate of damages

21   provide strong support for approval of the settlement, settlement offers that constitute

22   only a fraction of the potential recovery do not preclude a court from finding that the

23   settlement offer is fair.  *Id.* (finding settlement amount constituting one-sixth of the

24   potential recovery was fair and adequate).  Thus, district courts have found that

25   settlements for substantially less than the plaintiffs' claimed damages may be fair and

26   reasonable, especially when taking into account the uncertainties involved with

27   litigation.  *See Shames v. Hertz Corp.*, No. 07-CV-2174-MMA(WMC), 2012 WL

28   5392159 at *6 (S.D. Cal. Nov. 5, 2012).

The Complaint in this case alleges that each Class member is entitled to a civil penalty for each violation of California Civil Code section1747.08(e) in amounts of up to $1,000 per violation.  (ECF No. 1-1 at 11).  The proposed settlement provides Class members with Merchandise Certificates valued at approximately $1 million.  Divided by the 23,876 Class members, the settlement provides a $41.00 Merchandise Certificate to each Class member.  Given the risk, expense, complexity, and duration of further litigation, the Court finds that the amount and terms of the proposed monetary benefits to the Class members are fair and reasonable.

### 4.    Whether the class has been fairly and adequately represented during settlement negotiations

Counsel who represented the class included experienced attorneys at Stonebarger Law, APC and Patterson Law Group, APC.  Both firms are "very experienced in consumer class actions" and "have represented millions of consumers in numerous class actions asserting violations of California's consumer-protection statutes, including the Song-Beverly Credit Card Act of 1971."  (ECF No. 68-1 at 18; *see also* ECF Nos. 65-3, 65-5).  Plaintiff's attorneys are well qualified to conduct this litigation and to assess its settlement value.  The Court finds that the Class has been fairly and adequately represented during settlement negotiations.

### 5.    The reaction of the class to the proposed settlement

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor the Court may consider in its settlement approval analysis.  *Shames*, 2012 WL 5392159 at *8 (citing *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976)).  The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement.  *Id.*; *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class filed no

opposition).

In this case, Class Notice was given (either by Direct Email Notice or Direct Mail Notice) to approximately 327,718 potential Class members.  (ECF No. 68-1 at 9). Notice was also given by publication and by website.  *Id*.  There have been no objections, and only seven requests to be excluded.  *Id*; *see also* McDermott Decl., ECF No. 68-3 ¶¶ 8-9.  The lack of objections and the small number of Class members who opted out of the settlement, compared to the large number of Class members who received Notice, favors approval of the settlement.

## 6.    Absence of collusion in the settlement process

In addition to the above considerations, the Court has an obligation to "satisfy itself that the settlement was not the product of collusion."  *Browning v. Yahoo! Inc.*, No. 04CV01463(HRL), 2007 WL 4896699, at *38 (N.D. Cal. Nov. 16, 2007).  In this case, the proposed settlement is the product of "extensive negotiations conducted at arm's-length among counsel and a well-respected mediator."  (ECF No. 68-1 at 19). Participation of a mediator is not dispositive, but is "a factor weighing in favor of a finding of non-collusiveness."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011); *Amunrud v. Sprint Commc'ns Co.*, 2012 WL 443751, at *10 (D. Mont. Feb. 10, 2012) (finding absence of signs of collusion based, in part, on mediator's participation); *In re HP Laser Printer Litig.*, 2011 WL 3861703, at *12-13 (C.D. Cal. Aug. 31, 2011) (same).

The case has been "hotly contested since its inception in May of 2011...."  (ECF No. 68-1 at 19).  Class counsel for LVNA has demonstrated that they were fully prepared to litigate this case through final judgment.  The Court is satisfied that the settlement process did not involve collusion.

## 7.    Class Action Fairness Act Considerations

When applicable, special considerations arise in cases involving coupon settlements.  CAFA allows a court to approve a coupon settlement "only after a hearing

to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e).  Although the "fair, reasonable, and adequate" standard is identical to that contained in Rule 23(e)(2), "several courts have interpreted section 1712(e) as imposing a heightened level of scrutiny in reviewing such [coupon] settlements." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F. 3d 646, 654 (7th Cir. 2006); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007)).  Likewise, Rule 23 itself may require closer scrutiny of coupon settlements.  *See* Fed. R. Civ. P. 23(h), 2003 Advisory Committee Notes ("Settlements involving non-monetary provisions for class members also deserve careful scrutiny to ensure that these provisions have actual value to the class.").  Before granting final approval, the Court "must discern if the value of a specific coupon settlement is reasonable in relation to the value of the claims surrendered." *True*, 749 F. Supp. 2d at 1069.

The Court must determine whether CAFA applies to the settlement in this case. Although CAFA defines other terms, it does not define what constitutes a "coupon." *See* 28 U.S.C. § 1711.  Courts have often blurred the distinction between "coupons" and "vouchers."  However, they are not equivalent.  *See Foos v. Ann, Inc.*, No. 11cv2794 L(MDD), 2013 WL 5352969, at *2 (S.D. Cal. Sept. 24, 2013).

> The distinction between a coupon and a voucher is that a coupon is a *discount* on merchandise or services offered by the defendant and a voucher provides for *free* merchandise or services....  A coupon requires a class member to purchase a product or services and pay the difference between full price and the coupon discount....  In contrast, a voucher is more like a gift card or cash where there is an actual cash value, is freely transferable, and does not require the class members to spend any additional money in order to realize the benefits of the settlement.

*Id.*

The terms of the proposed settlement agreement provide that the 23,876 individuals who timely submitted a valid claim will receive Merchandise Certificates in the amount of $41.00.  (McDermott Decl., ECF No. 68-3 ¶ 10).  "The Merchandise

Certificates will be good for all purchases at stand-alone Louis Vuitton retail stores in California, may not be combined, are fully transferable, and have a one-year expiration on use. The Merchandise Certificates cannot be redeemed at leased store locations within department stores." (ECF No. 62-1 at 10) (citing Exh. 1, Settlement Agreement, § III(C)).  Plaintiff contends that the Merchandise Certificates are not "coupons" because they provide dollar-for-dollar value and are "properly characterized as akin to cash."  (ECF No. 65-1 at 26).  At the December 12, 2013 fairness hearing, Class Counsel stated that there are several items for sale at Louis Vuitton retail stores in California that are priced below $41.00.  A Class member would be able to use the Merchandise Certificate to acquire *free* merchandise, and would not be required to spend any additional money in order to realize the benefit of the settlement.  The Court finds that the Merchandise Certificates are vouchers and not coupons, and CAFA does not apply.

However, even *if* CAFA applied here, the Court has undertaken the "heightened analysis" required by the statute.  Specifically, the Court has satisfied CAFA's requirement that a hearing be held and the Court's findings be in writing.  *See* 28 U.S.C. § 1712(e).  The Court is satisfied that the settlement in this case does not violate Congress's concern that in many cases "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value."  Pub. L. No. 109-2, 119 Stat. 4, § 2(a)(3).

### C.    Conclusion

The Court finds that the settlement is fundamentally "fair, adequate and reasonable" under Rule 23(e), and that no evidence of collusion exists.  The Court grants the Motion for Final Approval of Class Action Settlement (ECF No. 68).

## IV.    Motion for Attorney's Fees & Costs

The parties have agreed upon an award of $375,000.00 in attorney's fees and costs, and a $5,000.00 incentive award to the named Plaintiff, Deanna Morey.  (ECF

No. 65-1 at 8). "This compromise was reached by the parties to avoid further litigation of these issues and a contested fee motion.  Under no circumstances will any of the proposed fees and costs diminish the payout to the Class." (Stonebarger Decl., ECF No. 65-2 ¶ 4).

### A.    Relevant Law

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth*, 654 F.3d at 942.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id*.  After computing the lodestar figure, the district court may then adjust the figure upward or downward taking into consideration twelve "reasonableness" factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Morales v. City of San Rafael*, 96 F. 3d 359, 363 n. 8 (9th Cir. 1996).

The hours expended and the rate should be supported by adequate documentation and other evidence; thus, attorneys working on cases where a lodestar may be employed should keep records and time sheets documenting their work and time spent. *Hensley*

*v. Eckerhart*, 461 U.S. 424 (1983).  But as the Supreme Court has noted, trial courts may use "rough" estimations, so long as they apply the correct standard.  *Fox v. Vice*, __ U.S. __, __, 131 S. Ct. 2205, 2216 (2011).

### B.   Analysis

The Court applies the lodestar method to calculate and evaluate attorneys' fees.  Plaintiff provides the Court with declarations from Gene J. Stonebarger and James R. Patterson in support of the Motion for Attorneys' Fees.  (*See* ECF Nos. 65-2, 65-3, 65-4, 65-5).  Class counsel calculated their lodestar using current billing rates for the five attorneys who worked on this case: $650 per hour for Gene J. Stonebarger; $500 per hour for Richard D. Lambert, an associate of Stonebarger Law, APC; $350 per hour for Elaine W. Yan, an associate of Stonebarger Law, APC; $675 per hour for James R. Patterson of Patterson Law Group, APC; and $675 per hour for Allison Goddard of Patterson Law Group, APC.  (ECF No. 65-1 at 15-16).  Plaintiff asserts that the requested rates are reasonable because "[d]istrict [c]ourts have, on numerous occasions, 'found reasonable attorneys fees based on rates of $650 for partner services [and] $500 for associate attorney services....'" (ECF No. 65-1 at 16) (citing *Faigman v. AT&T Mobility LLC,* No. C-06-0462 MHP, 2011 WL 672648, at *5 (N.D. Cal. Feb. 16, 2011); *Suzuki v. Hitachi*, No. C 06-7289 MHP, 2010 WL 956896, at *3 (N.D. Cal. Mar. 12, 2010)).  The Court finds that the hourly rates charged are reasonable.

Class Counsel contends that they had spent approximately 394.6 hours in prosecuting this action at the time the Motion for Attorneys' Fees was filed.  (*See* Stonebarger Decl., ECF No. 65-2 ¶ 6; Patterson Decl., ECF No. 65-4 ¶ 5).  Stonebarger Law, APC has expended 214.1 hours and $2,524.05 in costs.  (Stonebarger Decl., ECF No. 65-2 ¶ 6).  Patterson Law Group, APC has expended approximately 180.5 hours and $3,004.25 in costs.  (Patterson Decl., ECF No. 65-4 ¶ 5).  Class Counsel has not provided detailed time records, but instead provides general summaries of each firm's billing time.  (*See* ECF Nos. 65-2 at 4-5; 65-4 at 3-5).  The summaries and declarations

provide a sufficient showing of the hours counsel performed on this case. As of October 30, 2013, when the Motion for Attorneys' Fees was filed, Class Counsel's total fee lodestar in this action was $242,057.50. (Stonebarger Decl., ECF No. 65-2 ¶ 6; Patterson Decl., ECF No. 65-4 ¶ 5). In addition, Class Counsel had expended $5,528.30 in un-reimbursed expenses in the prosecution of this action, which brought the lodestar to $247,585.80. *Id*.

As previously noted, courts may enhance the lodestar figure with a multiplier. Plaintiff requests a multiplier of approximately 1.51 in order to bring the lodestar of $247,585.80 to a total fee award of $375,000.00. Having considered the factors for enhancing the lodestar in this action, the Court finds that counsel has displayed skill in presenting the claims; bore some risks in bringing this action; the Class received benefits because of the action; and the requested fee will not reduce the Class members' recovery. For these reasons, the Court will enhance the lodestar figure with the requested multiplier of 1.51.[3]

### C.   Conclusion

The Court approves the award of attorneys' fees, as well as Class Counsel's request for litigation costs and expenses, in the total amount of $375,000.

## V.   Class Representative Award

In assessing the reasonableness of an incentive award, several district courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995), which analyzes (1) risk to the class representative in commencing a class action, both financial and otherwise; (2) the

---

[3] Class Counsel further stated that at the time the Motion for Attorneys' Fees was filed, they anticipated spending a minimum of another 57 hours to complete the case. (Stonebarger Decl., ECF No. 65-2 ¶ 9; Patterson Decl., ECF No. 65-4 ¶ 5). Due to the additional time spent on the case after the filing of the Motion for Attorneys' Fees, including preparation for and participation in the fairness hearing on December 12, 2013, the actual lodestar number in this case is higher than $247,585.80, and therefore the multiplier used to reach the requested fee award of $375,000.00 is actually lower than 1.51.

notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. *Shames*, 2012 WL 532159 at *21 (citing *Carter v. Anderson Merchs., LP*, No. EDCV 08-0025-VAP(OPx), 2010 WL 1946784 (C.D. Cal. May 11, 2010)).

Class Representative Deanna Morey requests a $5,000 incentive payment to compensate for her services as court appointed Class Representative. (Declaration of Deanna Morey, ECF No. 65-6 ¶ 8). No Class member has objected to the Class Representative's requested incentive payment. Moreover, the parties have agreed that the Class Representative's requested incentive award is reasonable because "she dedicated a significant amount of time and effort in bringing this case forward and litigating this case, actively participating in this lawsuit, undertaking significant risks, and achieving substantial class benefits." *Id*. at 24. The Court finds that the $5,000 incentive award is within the acceptable range of approval, and does not appear to be the result of collusion. *See, e.g., Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012) ("[T]he settlement provides for an incentive award to the Plaintiff in the amount of $10,000. In this District, a $5,000 incentive award is presumptively reasonable."); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2012 WL 2721452, at *7 (S.D. Cal. Jul. 7, 2010) (approving a $5,000 award to a class representative in an antitrust case settling for $440,000). The Court approves the $5,000 incentive award for Plaintiff Deanna Morey.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Final Approval of Class Action Settlement (ECF No. 68), and the Motion in Support of Award of Attorneys' Fees, Costs, and Incentive Award (ECF No. 65) are GRANTED as follows:

1.     The Settlement and Settlement Agreement are hereby approved as fair, reasonable, adequate, and in the best interests of the Class, and the requirements of due process and Federal Rule of Civil Procedure 23 have been satisfied.  The parties are ordered and directed to comply with the terms and provisions of the Settlement Agreement.

2.     The Court, having found that each of the elements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied, for purposes of settlement only, the Class is permanently certified pursuant to Federal Rule of Civil Procedure 23, on behalf of the following persons:

> All persons who made a credit card purchase at a LVNA store in California during the period of time from May 20, 2010 to January 28, 2013 and who were requested to and did provide personal identification information, excluding transactions where such personal identification information was collected for a special purpose incidental but related to the individual credit card transaction, including information relating to shipping, delivery, servicing or repairing of the purchased merchandise or for special orders or paid holds.

The Class members identified in the Declaration of Matthew J. McDermott (ECF No. 68-3 ¶¶ 8-9) as having timely and properly elected to opt out from the Settlement and the Class are hereby excluded from the Class and shall not be entitled to any of the benefits afforded to the Class members under the Settlement Agreement.  The Court adopts and incorporates by reference its preliminary conclusions as to the satisfaction of Rules 23(a) and (b)(3) set forth in the Preliminary Approval Order (ECF No. 64) and notes again that because this certification of the Class is in connection with the Settlement rather than litigation, the Court need not address any issues of manageability that may be presented by certification of the class proposed in the Settlement Agreement.

3.     For purposes of Settlement only, the named Plaintiff is certified as Representative of the Class and Class Counsel is appointed to the Class.  The Court concludes that Class Counsel and the Class Representative have fairly and adequately represented the Class with respect to the Settlement and the Settlement Agreement.

4.      Notwithstanding the certification of the foregoing Class and appointment of the Class Representative, for purposes effecting the Settlement, if this Order is reversed on appeal or the Settlement Agreement is terminated or is not consummated for any reason, the foregoing certification of the Class and appointment of the Class Representative shall be void and of no further effect, and the parties to the proposed Settlement shall be returned to the status each occupied before entry of this Order without prejudice to any legal argument that any of the parties to the Settlement Agreement might have asserted but for the Settlement Agreement.

5.      Plaintiff and all Class members who are not excluded shall be deemed to fully and irrevocably release, waive, and discharge Defendant and each of its respective past, present and future owners, stockholders, parent corporations, related or affiliated companies, subsidiaries, officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, attorneys, auditors, consultants, insurers and re-insurers, and their respective successors and predecessors in interest, from any and all past, present, and future liabilities, claims, causes of actions (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), damages, costs, attorneys' fees, losses, or demands, whether known or unknown, existing or potential, or suspected or unsuspected, which Plaintiffs and all Class members have or may have arising out of or relating to any act, omission, or other conduct alleged or otherwise referred to in the Action (the "Released Claims").

6.      With respect to the Released Claims, Plaintiff and all Class Members who are not excluded shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law that purports to limit the scope of the general release.  Section 1542 provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS

FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

7.     The Court has reviewed the application for an award of fees, costs, and expenses submitted by Class Counsel and the exhibits, memoranda of law, and other materials submitted in support of that application. The Court recognizes that Defendant has not opposed the application for an incentive award of $5,000.00 to be paid by Defendant and an award of attorneys' fees and costs of $375,000.00 to be paid by Defendant.  This agreement is in addition to the other relief to be provided to Class members under the Agreement.  On the basis of its review of the foregoing, the Court finds that Class Counsel's request for attorneys' fees and expenses is fair, reasonable, and appropriate and hereby awards fees and expenses to Class Counsel in the aggregate amount of $375,000.00 and an incentive award to Plaintiff in the amount of $5,000.00 to be paid by Defendant in accordance with the terms of the Settlement Agreement.

8.     Neither the Settlement Agreement nor any provision therein, nor any negotiations, statements or proceedings in connection therewith shall be construed as, or deemed to be evidence of, an admission or concession on the part of the Plaintiff, any Class Member, Defendant, or any other person of any liability or wrongdoing by them, or that the claims and defenses that have been, or could have been, asserted in the action are or are not meritorious, and this Order, the Settlement Agreement or any such communications shall not be offered or received in evidence in any action or proceedings, or be used in any way as an admission or concession or evidence of liability or wrongdoing of any nature or that Plaintiff, any Class member, or any other person has suffered any damage; *provided, however,* that the Settlement Agreement, this Order, and the final Judgment to be entered thereon may be filed in any action by Defendant or Class members seeking to enforce the Settlement Agreement or the final Judgment by injunctive or other relief, or to assert defenses including, but not limited to, *res judicata*, collateral estoppel, release, good faith settlement, or any theory of

claim preclusion or issue preclusion or similar defense or counterclaim. The Settlement Agreement's terms shall be forever binding on, and shall have *res judicata* and preclusive effect in, all pending and future actions or other proceedings as to Released Claims and other prohibitions set forth in this Order that are maintained by, or on behalf of, the Class members or any other person subject to the provisions of this Order.

9.      In the event that the Settlement Agreement does not become effective or is cancelled or terminated in accordance with the terms and provisions of the Settlement Agreement, then this Order and the final Judgment shall be rendered null and void and be vacated and all orders entered in connection therewith by this Court shall be rendered null and void.

10.     The action and the claims alleged therein are hereby ordered DISMISSED with prejudice.

11.     Without in any way affecting the finality of this Order and the final Judgment, the Court hereby retains jurisdiction as to all matters relating to the interpretation, administration, and consummation of the Settlement Agreement.

DATED: January 9, 2014

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge